[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10883
Non-Argument Calendar
_____

Agency No. A095-254-900

BABATUNDE ALABA KALEJAIYE,
BABATUNDE AYOTOKUNBO KALEJAIYE,
CAROLINE OLUFUNKE KALEJAIYE MODUPE,
BABAFUNLOLA AYODESOLA KALEJAIYE,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 5, 2013)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Babatunde Alaba Kalejaiye and his wife and children, citizens of Nigeria, seek review of the Board of Immigration Appeals (BIA) final order affirming the Immigration Judge's (IJ) denial of Kalejaiye's application for asylum, pursuant to 8 U.S.C. § 1158(a).[1]  On appeal, Kalejaiye argues that the BIA's conclusion that the Department of Homeland Security (DHS) rebutted his presumption of a well-founded fear of persecution for being a Christian because he could safely relocate to southern Nigeria was not supported by substantial evidence.  Kalejaiye argues that the BIA failed to examine all of the reasonableness factors as required by 8 C.F.R. § 1208.13(b)(3), which demonstrate that it would be unreasonable to expect him to internally relocate.  He explains that, in addition to prevalent persecution against Christians by Muslims, Nigeria has ongoing civil strife, problems with the administrative and judicial infrastructure, displacement of over one million people, and widespread gender discrimination that would negatively impact his family.

## I.

Kalejaiye is a citizen of Nigeria who entered the United States on or around December 20, 2001 on a temporary visa permitting him to stay through December

---

[1] The district court also denied Kalejaiye's request for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 208.16(c).  On appeal, the BIA concluded that because Kalejaiye did not meet the lesser burden of proof to qualify for asylum, he did not carry the higher burden for withholding of removal.  Also, he was ineligible for CAT relief because he did not show that it was more likely than not that he would be tortured upon his return to Nigeria.  As Kalejaiye does not appeal these claims, they are deemed abandoned.  *See Access Now, Inc. v. SW Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

19, 2002.  In September 2002, Kalejaiye filed an application for asylum, withholding of removal, and protection under CAT.  Kalejaiye and his family are Christians, and he served as a Vicar Warden in his church.  Following several delays and a hearing, the IJ denied all requested relief but granted voluntary departure.  On April 10, 2006, Kalejaiye appealed the IJ's decision to the BIA, which "adopt[ed] and affirm[ed] the decision of the [IJ] in whole, including his determination that the respondents failed to carry their burden of proof that they had suffered past persecution or have a well-founded fear of future persecution in Nigeria."  Subsequently, Kalejaiye filed a motion with the BIA to reopen the case, arguing that his counsel at initial proceedings was deficient.  The BIA granted his motion, remanding the case for further proceedings.  On remand, after reviewing significant evidence submitted from each side, the IJ denied Kalejaiye's application, concluding that although he suffered past persecution due to his religion, the DHS rebutted the presumption of a well-founded fear of persecution by a preponderance of the evidence because Kalejaiye could avoid persecution by relocating to a different area of southern Nigeria.  On appeal, the BIA affirmed, concluding that the IJ's determination that DHS rebutted the presumption of a well-founded fear was not clearly erroneous.

II.

3

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion.  Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well."  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal citations omitted).  We review legal and constitutional questions de novo, and we "review[] factual determinations under the substantial evidence test."  *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013).  This factual review is highly deferential, and we review the record in the light most favorable to the agency decision.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009).  "[T]his Court must affirm if the BIA's decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Zhou*, 703 F.3d at 1307 (internal quotation marks omitted).  Reversal based on factual findings is only appropriate if "the record not only supports reversal, but compels it."  *Id*.

An alien who arrives in or is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  DHS has discretion to grant asylum if the alien meets the INA's definition of "refugee."  8 U.S.C. § 1158(b)(1).  "Refugee" is defined as follows:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  The applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284.  To establish eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a factor listed in the statute, or (2) a well-founded fear that the factor will cause future persecution.  *Al Najjar*, 257 F.3d at 1287.

A showing of past persecution creates a presumption of a well-founded fear of persecution, which is subject to rebuttal.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam).  To overcome the presumption of a well-founded fear of future persecution, the government must provide evidence for the IJ to find either: "(1) that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," or "(2) the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality and under all the circumstances, it would be reasonable to expect the applicant to do so."  *Kazemzadeh*, 577 F.3d at 1351–52 (internal alterations omitted).  In considering the reasonableness of relocation, the Code of Federal Regulations provides the following:

> [A]djudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. Those factors may, or may not, be relevant, depending on all the circumstances of the case, and are not

5

necessarily determinative of whether it would be reasonable for the applicant to relocate.

8 C.F.R. § 1208.13(b)(3).  To rebut the presumption of a well-founded fear of future persecution, the government must establish "by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate."  *Id.* at § 1208.13(b)(3)(ii).

We have held that, where persecution could be expected throughout a country, relocation would not be reasonable.  *Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1226–27 (11th Cir. 2006).  In *Arboleda*, DHS did not meet its burden to establish that petitioners could reasonably relocate because "evidence in the record compel[led] a finding that the [militant group FARC] operate[d] country-wide in Colombia," and petitioner's evidence  "attest[ed] to the widespread nature of [the militant group's] atrocities committed throughout the entire country."  *Id.*  Further, the BIA's failure to mention any of the reasonableness factors in 8 C.F.R. § 1209.13(b)(3) was reversible error.  *Id.* at 1225, 27.

### III.

Upon review of the record and consideration of the parties' briefs, we deny Kalejaiye's petition.  We review only the BIA's decision, because it did not expressly adopt the IJ's opinion.  *See Al Najjar*, 257 F.3d at 1284; *see also Arboleda*, 434 F.3d at 1222.

6

Substantial evidence supports the BIA's determination that DHS rebutted Kalejaiye's well-founded fear of persecution because he could reasonably relocate within southern Nigeria to avoid persecution.  The 2010 International Religious Freedom Report for Nigeria, submitted by DHS, indicated that religious conflicts between Muslims and Christians occurred largely in the northern and central regions of the country, while southern Nigeria was predominantly Christian. Kalejaiye's evidence of religious violence supported this finding, as the articles primarily describe events of violence in the northern and central regions.  Further, although the Muslim extremist organization Boko Haram asserts that its goal is to replace the Nigerian government with an Islamic regime, there was no evidence this goal would be achieved.  Further, although Kalejaiye maintains that the BIA relied entirely on two U.S. State Department reports to rebut the presumption of persecution, this court has noted that "nothing in our precedent suggests that two country reports issued by the State Department are *pre se* insufficient to … rebut a presumption of future persecution."  *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1198–1200 (11th Cir. 2009).

Unlike in *Arboleda*, where there was danger of persecution throughout the country, 434 F.3d at 1225–27, here the threat of persecution against Christians is much less significant in the southern region.  In *Arboleda*, this court considered that after the petitioner relocated to avoid persecution by the radical group FARC,

7

he and his family continued to be threatened. *Id.* at 1226. In contrast, here, the evidence indicates that when Kalejaiye left Lagos and lived elsewhere in southern Nigeria, he did not suffer persecution. In fact, here the BIA specifically noted that Kalejaiye had traveled freely throughout the country and had fled Lagos, living elsewhere in southern Nigeria, without harm.[2]

In addition, substantial evidence supports the BIA's determination that it would be reasonable to expect Kalejaiye to relocate within Nigeria. *See* 8 C.F.R. § 1208.13(b)(1)(i)(B). The BIA cited § 1208.13(b)(3) and acknowledged the reasonableness factors that it considered. The regulation does not require the IJ or BIA to consider every factor because not all factors will be relevant in every case. *See id.* § 1208.13(b)(3); *see Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). Here, the BIA considered that Kalejaiye was able to travel through central and northern Nigeria in his official capacity as Vicar's Warden, and he traveled and resided in cities in southern Nigeria outside of Lagos. We do not re-weigh evidence, and there is no evidence in the record which would compel us to reverse the BIA's determination that Kalejaiye could relocate to somewhere within southern Nigeria outside of Lagos. *See Zhou*, 703 F.3d at 1307. Construing the evidence in light most favorable to the BIA's determination, the record did not support the notion that violence against Christians would likely spread to southern

---

[2] Kalejaiye insists that he only traveled freely in southern Nigeria prior to the 2001 attack.

8

Nigeria.[3]  Accordingly, we deny the petition.

**PETITION DENIED.**

---

[3] Although Kalejaiye points to civil strife, political problems, and gender discrimination that was described in the DHS country reports, that evidence does not compel reversal on the basis that it would be unreasonable to expect him to relocate to elsewhere in southern Nigeria.